```
                                                                RECEIVED
                                                       USDC CLERK, CHARLESTON, SC
         IN THE UNITED STATES DISTRICT COURT
              DISTRICT OF SOUTH CAROLINA              2017 FEB 14  PM 1:35
                   CHARLESTON DIVISION
```

| | | |
|---|---|---|
| Juanita Hart *and* Devon Hart-Barron, | ) | Civil Action No. 2:16-2777-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Safeco Insurance Co., *a subsidiary of* | ) | |
| *Liberty Mutual Insurance Company*; | ) | |
| *and* First National Insurance Company of | ) | |
| America, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' motion for partial summary judgment on Plaintiffs' claims for breach of contract and bad faith denial of insurance. For the reasons set forth below, the Court grants the motion, grants summary judgment on Plaintiffs' claim for equitable estoppel, and grants summary judgment on Plaintiff's claims for negligent misrepresentation and promissory estoppel to the extent those causes of action seek damages for Defendants' refusal to provide insurance coverage. Because Plaintiffs' remaining claims are state-law claims that cannot possibly approach the jurisdictional threshold of $75,000, the Court remands this matter to the Charleston County Court of Common Pleas.

I. **Background**

This is an automobile insurance coverage case. Plaintiffs Juanita Hart and Devon Hart-Barron allege that, in August 2015, Ms. Hart purchased an automobile insurance policy (number F3013258) issued by Defendants from American Auto, an independent insurance agent. (Dkt. No. 54 ¶ 8.) Effective December 31, 2015, Ms. Hart added a 2015 Nissan Sentra to the Safeco policy and Plaintiff Devon Hart-Barron as a named insured. (*Id.* ¶¶ 12–15.) Plaintiffs allege American Auto and Safeco setup a monthly automatic draft payment plan from Ms. Hart's checking account

for the insurance premiums. (*Id.* ¶ 11.) The undisputed facts show Ms. Hart setup a monthly debit card payment, with her premiums charged to a Visa card ending in 7047 and expiring in August 2019. (*See* Dkt. Nos. 57-1 ¶ 3; 58-1 at 3–4; 58-14.)

On February 1, 2016, Ms. Hart-Barron was involved in an automobile accident that rendered the 2015 Sentra a total loss. (Dkt. No. 54 ¶¶ 16–17.) Plaintiffs notified Defendant Safeco and American Auto. (*Id.*) On February 4, 2016, Defendants acknowledged coverage for the accident and offered to pay for the vehicle. (*Id.* ¶ 19.) That offer was contingent on Plaintiffs executing a power of attorney authorizing Safeco to salvage the vehicle. (*Id.* ¶ 20.)

Plaintiffs allege that on February 9, 2016, Ms. Hart called American Auto to ask for instructions regarding transfer of the vehicle to Defendants, she was informed that the January premium payment was not processed and that her policy may be cancelled. (*Id.* ¶ 22.) It is undisputed that the premium due on January 3, 2016 was not paid. (*See id.* ¶ 25.) Plaintiffs allege Defendants never executed the scheduled automatic draft and provided no notice of nonpayment. (*Id.* ¶¶ 22, 25–26.) Defendants aver that Ms. Hart's card was declined and that timely notice of nonpayment and cancellation were provided. (Dkt. No. 57-1 ¶ 4.)

Despite the cancellation of coverage, Plaintiffs nonetheless executed the power of attorney and Defendants took possession of the vehicle on February 15, 2016. (Dkt. No. 54 ¶ 23.) After Defendants took possession of the vehicle, Plaintiffs learned the insurance policy had been cancelled because the January 2016 premium payment was not made. (*Id.* ¶¶ 24, 26.) Plaintiffs further allege that they demanded return of the vehicle but Defendants refused because the vehicle had already been scrapped. (*Id.* ¶ 26.) Defendants claim the vehicle was in fact returned and Plaintiffs have since conceded the vehicle was returned on July 8, 2016. (*See* Dkt. Nos. 56 ¶ 19; 58 at 4.)

On July 5, 2016, Plaintiffs filed the present action in the Charleston County Court of Common Pleas. The case was removed to this court on August 9, 2016. The second amended complaint asserts six causes of action: conversion, breach of contract, bad faith denial of insurance, negligent misrepresentation, promissory estoppel, and equitable estoppel. Defendants move for summary judgment on Plaintiffs' claims of breach of contract and bad faith.

## II. Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

Defendant moves for partial summary judgment because there is no genuine dispute that Ms. Hart's automobile insurance policy was cancelled for nonpayment of premium due January 3, 2016, after she received proper notice of cancellation. The Court agrees. Plaintiffs produce no evidence suggesting that Defendants failed to present Ms. Hart's January premium to Wells Fargo for payment or failed to provide notice of nonpayment and cancellation in proper form and timely under the insurance contract and under S.C. Code § 38-77-120.

Plaintiffs' argue Ms. Hart's bank records are evidence suggesting Defendants failed to present her January premium to Wells Fargo:

> Unbeknownst to Plaintiffs, Safeco never automatically drafted Ms. Hart's account for the January premium. Safeco claims there were insufficient funds in the Wells Fargo checking account to pay the January premium, but if there were insufficient funds in Ms. Hart's bank account, Wells Fargo would have paid the premium, charged a $35 overdraft fee to the account, and notified Ms. Hart that her account was overdrawn so she could deposit funds. *See* Exhibit 2 – Hart Depo. 67:3-68:6.[1] Because Safeco set up the automatic premium payment plan using Mrs. Hart's Wells Fargo routing number and checking account number, drafted the August 2015 through December 2015 payments but never drafted Mrs. Hart's account in January or February 2016 pursuant to the automatic bill payment system it set up, the responsibility for any failure to pay a premium rests solely with Safeco. This is verified by Mrs. Hart's Wells Fargo bank statements marked as an Exhibit in her deposition and attached as Exhibit 3 herein. These show no return item fees from December 11, 2015 through February 10, 2016.

(Dkt. No. 58 at 2–3.) That argument is misguided. Plaintiffs admit that Ms. Hart setup automatic payments to her checking account with her Visa debit card, not "Mrs. Hart's Wells Fargo routing number and checking account number." (Dkt. No. 58-1 at 3–4 (Plaintiffs' supplemental interrogatory responses).) Plaintiffs' supplemental interrogatory responses claim that PIN-less

---

[1] Ms. Hart is not qualified to testify about how Wells Fargo processes transactions, but, regardless, this citation is to a portion of Ms. Hart's deposition that does not concern bank overdrafts.

debit card transactions[2] are processed through the Automatic Clearing House ("ACH") network. ACH transfers process like checks and can generate non-sufficient funds ("NSF") charges on checking accounts. But PIN-less transactions initiated with a Visa debit card are processed through the Visa network. *See* Wells Fargo, *Payment Network Qualification Matrix* (Oct. 14, 2016), http://www.wellsfargo.com/assets/pdf/small-business/merchant/interchange-plus.pdf.[3]   Wells Fargo does not charge fees for declined debit card transactions, so declining Ms. Hart's January 3, 2016 insurance premium would not produce an NSF charge on her account. *See* Wells Fargo, *How to Avoid Overspending*, http://www.wellsfargo.com/financial-education/basic-finances/manage-money/cashflow-savings/avoid-overspending/ ("There is no fee associated with a declined ATM or debit card transaction."). Thus, the absence of an NSF charge is not evidence that Defendants did not present Ms. Hart's January premium for payment.

Further, on January 3, 2016, Ms. Hart's account was overdrawn by $663.95 and it had been overdrawn for six days. (Dkt. No. 58-3 at 2.) Ms. Hart's account did not have overdraft protection or a debit card overdraft service. (*Id.* at 1.) There is no reason to believe that an attempted debit card charge of $379.91 (the amount of the January premium) to Ms. Hart's account when it was overdrawn by $663.95 would not decline. Moreover, while Plaintiffs have no evidence that Defendants failed to present Ms. Hart's January premium to Wells Fargo for payment, Defendants have substantial evidence that they did. Defendants produce an affidavit from a receivables manager, swearing that Ms. Hart's card declined a payment request for the January premium that

---

[2] *I.e.*, a transaction processed against a debit card number on file, where the cardholder does not enter a PIN on a keypad at the point-of-sale.

[3] Visa rules allow issuers to process non-Visa, non-PIN payments to known merchants through other ATM/debit networks in some situations. *See* Fed. Reserve, *Meeting Between Federal Reserve Board Staff and Representatives of Visa* (Nov. 26, 2013), http://www.federalreserve.gov/newsevents/rr.../visa-meeting-20131126.pdf.

Defendants submitted on January 3, 2016. (Dkt. No. 57-1.) Defendants also produce copies of the cancellation notice for non-payment of premiums sent to Ms. Hart on January 11, 2016, and certificates of mailing of that notice. (*Id.*)

The Court therefore finds no genuine dispute that Defendants attempted to charge Ms. Hart's debit card for her January premium and that the charge declined because Ms. Hart's checking account was overdrawn. Defendants therefore were entitled to cancel Ms. Hart's insurance coverage, subject to contractual and statutory notice requirements. *See* S.C. Code § 38-77-123(B)(2) (providing an insurer may cancel a policy for nonpayment of premium); (Dkt. No. 57-2 at 45 (contractual terms providing for cancellation for nonpayment)). Defendants aver that they did mail Ms. Hart termination notice satisfying statutory and contractual requirements. (Dkt. No. 57-1.) Plaintiffs do not dispute that. Rather, they argue 1) notice was not also sent to Ms. Hart-Barron's North Charleston address and 2) email notice was sent to Ms. Hart's independent insurance agent and not to Ms. Hart. (Dkt. No. 58 at 7.) The policy, however, plainly states, "We may cancel by mailing notice to the named insured shown in this policy." (Dkt. No. 57-2 at 45.) There is no requirement to mail additional notices to additional insureds who are not named insured or to supplement mailed notice with email.[4] Nor is proof of receipt of notice required. "[T]he actual receipt by the insured of such notice is not a condition precedent to a cancellation of the policy by the insurer, and the mere mailing of the letter containing a notice of cancellation is sufficient to effect a cancellation." *Moore v. Palmetto Bank*, 120 S.E.2d 231, 233 (S.C. 1961) (citations omitted).

---

[4] Even if email notice were required, the parties agree Defendants did email notice of the nonpayment to Ms. Hart's email address on file, which was the email address of her independent insurance agent. (*See* Dkt. Nos. 57-3; 58 at 7.) Whether Ms. Hart's agent thereby assumed a duty of care to alert Ms. Hart to communications from her insurer and whether the agent subsequently breached that duty are issues between Ms. Hart and her agent, not Ms. Hart and her insurer.

Ms. Hart's policy was cancelled effective January 31, 2016. She had no insurance contract in force with Defendant on February 1, 2016, when her accident occurred. Defendants' failure to cover her February 1, 2016 accident therefore does not give rise to any claim for breach of contract or bad faith. Defendants therefore are entitled to judgment as a matter of law on Plaintiffs' second cause of action (breach of contract) and third cause of action (bad faith) and the Court grants Defendants' motion for summary judgment on those causes of action.

Although Defendants have not moved for summary judgment on Plaintiffs' sixth cause of action—alleging Defendants are equitably estopped from denying coverage of the February 1, 2016 accident—the Court concludes they are entitled to summary judgment on that claim as well. Plaintiffs assert Defendants are estopped from denying coverage because Defendants represented Plaintiffs would have coverage so long as they paid premiums due, because Defendants represented they would make monthly payment requests to Wells Fargo for premiums due, and because Defendants represented they would provide notice of nonpayment before cancelling insurance coverage. (Dkt. No. 54 ¶¶ 59–60.) For the reasons discussed above, there is no dispute that Ms. Hart would have had coverage had she paid the premiums, that Defendants did attempt to draft Ms. Hart's bank account as agreed, and that Defendants did provide the required notice of nonpayment and cancellation. Defendants therefore are entitled to judgment as a matter of law on Plaintiffs' sixth cause of action (equitable estoppel) and the Court grants summary judgment on that cause of action. For the same reasons, the Court grants summary judgment on Plaintiffs' fourth cause of action (negligent misrepresentation) and fifth cause of action (promissory estoppel) to the extent those causes of action seek damages for Defendants' refusal to provide insurance coverage of the February 1, 2016 accident.

The only remaining claims in this action concerns the salvage of Ms. Hart's vehicle. It is undisputed that Defendants induced Ms. Hart transfer the vehicle to them by representing such transfer as a prerequisite for coverage—coverage which, as explained above, Ms. Hart in fact did not have. (See Dkt. Nos. 58-9.) Plaintiffs admit the wreck was returned to Ms. Hart, but they assert that occurred after a delay of several weeks, and only after this action was filed. (Dkt. No. 58 at 4.) If Plaintiffs' allegation is true, Plaintiffs possibly could recover on their pleaded theories of conversion, negligent misrepresentation, or promissory estoppel. But those are state law causes of action and the undisputed salvage value of the vehicle was $2,055. (*See* Dkt. No. 57-5 at 6.) The Court finds a legal certainty that claims regarding a purported three-month conversion of a wrecked Nissan Sentra worth $2,055 cannot satisfy the $75,000 threshold for diversity jurisdiction. *See* 28 U.S.C. § 1332(b). When the claims giving rise to federal jurisdiction in a case originally filed in state court are dismissed before trial, any remaining state law claims generally should be remanded back to state court for resolution. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27 (1966). The Court therefore remands this action to the Charleston County Court of Common Pleas.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial summary judgment on Plaintiffs' second cause of action (breach of contract) and third cause of action (bad faith). Further, the Court **GRANTS** summary judgment for Defendants on Plaintiffs' sixth cause of action (equitable estoppel) and **GRANTS** summary judgment for Defendants on Plaintiffs' fourth cause of action (negligent misrepresentation) and fifth cause of action (promissory estoppel) to the extent those causes of action seek damages for Defendants' refusal to provide insurance coverage of the February 1, 2016 accident. The Court **REMANDS** this action to the Charleston County Court of Common Pleas.

-9-

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

February _14_, 2017
Charleston, South Carolina